Jack Einheber, PLAINTIFF Pro Se
2124 Kittredge St. #400
Berkeley, CA 94704
(510) 290-1299
        and
P.O. Box 250014
New York, New York 10025
Facsimile (212) 866-4363



FILED

FEB 2 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

JACK EINHEBER,

      Plaintiff,

      vs.

THE REGENTS OF THE
UNIVERSITY OF CALIFORNIA,
THE UNIVERSITY OF CALIFORNIA
AT BERKELEY, DEBRA
HARRINGTON, JOYCE HARLAN
and VICTORIA HARRISON in their
personal and individual capacities, et
al.,

      Defendants

:  Case No.: C97 04352 CW
:  C 07-3319 PJH
:
:  AMENDED COMPLAINT PER FRCP
:  3 AND 77(a) FOR VIOLATION OF
:  PLAINTIFF'S RIGHTS PER
:  AMENDMENTS I AND XIV OF THE
:  CONSTITUTION OF THE UNITED
:  STATES OF AMERICA AND FOR
:  DISABILITY DISCRIMINATION
:  PER ADA AND UNDER SECTIONS
:  794(b)(2)(A) AND REMEDIES
:  UNDER SECTION 794a (a)(1), (a)(2),
:  (b) OF THE FEDERAL
:  REHABILITATION ACT OF 1973

Accompanying Papers: Motions for
ADR; E-Mail Filing; and Enlargement
of Time to Respond

Judge: Hon. Claudia Wilken

**Jurisdiction.** The court has jurisdiction over this complaint because it arises under the laws of the United States. The University of California (UC) and the University of California at Berkeley (UCB) receives a substantial portion of its funding from the Federal Government of the United States of America (US.). As such and under other parameters and guidelines it is bound by the rules and regulations of the United States.

1 **Venue.** Most events and issues in this case occurred in the Northern District of
2 California, more specifically in San Francisco and Alameda Counties.

3

## I. PURPOSE OF THE COMPLAINT AND ITS SIGNIFICANCE

**The thrust of this complaint is simply a request to have the Court
reverse defendants' deprivation of plaintiff's rights to complete his rightful
denial of  promotion grievance processes, as provided by the defendants own
policies, procedures and the U.S. Constitution.**

This case is significant because the manner in which defendants, who are
employees of and representing the University of California (UC) and University of
California at Berkeley (UCB) deprived plaintiff of these due process rights. The
impact and repercussions of a decision herein potentially could substantially
impact the rights of hundreds of thousands of UC employees, affiliates, students
and other persons today and futureward protected under these rights.

## II. GENERAL BACKGROUND

Plaintiff, Officer Jack Einheber, was a decorated peace office on active duty
with the University of California at Berkeley Police Department (UCBPD) for a
period of more than twelve years.  Based on statements Officer Einheber witnessed
from his supervisors, then patrol lieutenant Howard Hickman and patrol sergeant,
John Powell, Officer Einheber was generally recognized Department-wide as
either its most productive or one of its two most productive police officers.  For
nearly two years he worked on a special multi-police agency joint drug task force,
mainly out of the City of Berkeley Police Department Headquarters.[1]

---

[1] At different times he successfully supervised activities of law enforcement
officers from at least five different local, State and Federal agencies.

Einheber v. Regents et al.  Amended complaint for violations of plaintiff's Amendments I & XIV rights    Page 2

Officer Einheber was especially active in helping disadvantaged youth and disadvantaged families, spending much of his own time in community and public benefit activities.   E.g. he was the Department's only officer to teach in the Berkeley School System's DAPP (Drug Abuse Prevention Program). [2]

Officer Einheber was denied promotion several times while top scorer on the UC Police System-wide sergeants promotional list. He was in the midst of a denial of promotion hearing when he was terminated on January 17, 1991. In binding arbitration the termination was reversed on May 7, 1993.

Thereafter Officer Einheber repeatedly requested resumption of the denial of promotion hearings. Defendants, however, repeatedly delayed resumption until finally, without warning, they cancelled the hearings with prejudice.

### III. PROCEDURAL HISTORY

In November, 1990 Officer Jack Einheber was in the midst of a grievance hearing he initiated to contest denial of promotion. The subject of that grievance hearing was that when Officer Einheber became top System-wide scorer on the sergeants promotional list, UCBPD abruptly stopped its seventeen year unwavering practice, (Since inception of UC Police System-wide promotional

---

[2] Berkeley Police Department (BPD) and UCBPD had many joint functions.  BPD had about ten officers teaching in DAPP, who were paid for their time, which was on duty, whereas plaintiff voluntarily forfeit pay to perform this valuable public service.

1   testing), of automatically promoting any such UCBPD officer to the first sergeants
2   opening at UCBPD.[3]
3       UCBPD's chief, Victoria Harrison, issued a notice of intent to dismiss
4   Officer Einheber on November 21, 1990, the day before Thanksgiving and during
5   the midst of Officer Einheber's grievance hearing process.[4] Final rebuttal and
6   completion of that hearing had been scheduled for the following working day,
    November 25, 1990.[5] Officer Einheber was terminated January 17, 1991.
7       Based on a conversation on November 20, 1990, on the strong advice of
8   Joyce Harlan, UCB's labor relations grievance advocate and UC's representative,
9   plaintiff agreed to hold the promotional hearings in abeyance. In that conversation
10  Harlan told plaintiff that the hearings might be moot were he to be terminated.
11
12
_____

13  [3] Officer Einheber had received the highest score in the UC Police System-wide
14  sergeant's promotional process. Leading an original field of more than 100 police
    officers by some 1 ½ %. Officer Einheber was the only UC Berkeley officer
15  among the list's top ten, a noted demarcation point.
16      [4] The notice of intent to dismiss and subsequent termination was
17  allegedly based on an off duty incident occurring on November 2, 1990.
    Considering facts and circumstances, a Hearing Officer, in binding
18  arbitration reversed the termination on May 7, 1993. His decision was
19  accepted by then UCB Chancellor Tien.
20  **New evidence from an impartial source demonstrates Officer Einheber
    had been behaving properly and in a humanitarian manner as well as acting
21  in the public interest. His actions were in accord with California Health and
    Safety Code §11367 and Evidence Code §1040b.** Thus, the termination was
22  likely unjustified and Officer Einheber's conduct likely should have been
23  exonerated.

24      [5] Upon information and belief on the basis of assessment by two experienced
25  professional observers present at the hearing it appeared as though plaintiff would
    likely succeed in his grievance reversing denial of his promotion.

Officer Einheber's termination was reversed on May 7, 1993. The Hearing Officer who reversed the termination conducted a remedy hearing in September, 1993 followed by several months of back and forth negotiations between the parties. The remedy, however, was to remain, unresolved until November 4, 1996.

Beginning in late 1993, plaintiff numerous times requested resumption of the in process denial of promotion grievance hearings. He telephoned both grievance coordinator, Rosemary Leb and Harlan on several occasions requesting such.

**Starting in the Fall of 1993 plaintiff also wrote numerous letters requesting resumption and conclusion of the grievance hearings. UCB's Labor Relations Department refused resumption of plaintiff's grievance hearings for more than two years. Harlan told plaintiff that UCB's Labor Relations Department was postponing resumption of his denial of promotion hearings at UCBPD's request.**

**After repeated requests by plaintiff, with no explanation and in the midst of remedy proceedings, UCB's Labor Relations Department scheduled resumption of the hearings for March, 1996.**

**After the March, 1996 hearing had already been scheduled plaintiff told UC General Counsel, Jeffrey Blair and UCB Grievance Coordinator Leb and Labor Relations Advocate Harlan that he wanted to expedite the matter because, for the first time, his liver function tests were in the abnormal range and he did not want further delays. Shortly thereafter, and prior to any actual resumed hearings, UCB's Labor Relations Department cancelled the hearings.**

When the hearings were finally resumed in the Spring of 1998, plaintiff was in much deteriorated health, to the point that he could no longer sit through a hearing. During that hearing Harlan and UCBPD Captain William Foley observed

plaintiff actually momentarily lose consciousness and teeter precariously on his chair.

**Plaintiff underwent a liver transplant February 1, 1999 and has since suffered numerous complex complications thereof.**

In light of plaintiff's numerous post-transplantation complications, post-transplant grievance hearing scheduling was delayed.  On plaintiff's return to the West Coast in late 2001 UCB Labor Relations Manager Debra Harrington and Joyce Harlan agreed to make provisions for resuming the hearings. Harlan, who was responsible for arranging details however, never followed through with the arrangements and scheduling as she had told plaintiff she would.

In the summer of 2002, plaintiff was hospitalized twice with life threatening illness for a total of thirty days.  (He remained ill until two liver abscesses were diagnosed in March of 2005.)

**In late 2004, Debra Harrington wrote plaintiff that Joyce Harlan would be** contacting him after the first of the year (2005) to schedule the hearings. Harlan **never followed through and plaintiff became critically ill in early 2005.  (Plaintiff** suffered two liver abscesses; one was a lemon-sized, never before diagnosed in a liver, 6 cm multi-loculated abscess and presented unprecedented treatment problems.)

Plaintiff was hospitalized for 45 days from March 4, 2005 through April 18, 2005.  He was then transferred to a skilled nursing facility where he remained for another 31 days.  Plaintiff has since suffered cryptogenic fevers and other **debilitating symptoms, but has been ready to proceed with completion of the** grievances

Plaintiff never received word from Harlan regarding re-scheduling the hearings, instead, without warning and while on the East Coast, on approximately June 16, 2006 plaintiff received a direct (not forwarded) letter from Harlan dated

June 5, 2006 saying the hearings were cancelled permanently and with prejudice. Labor Relations Manager Harrington and UCBPD Chief Victoria Harrison were copied on that letter. That letter apparently also denied plaintiff his rights to protest the abortion of the scheduled combined grievance of his three other denials of promotion.

Within about thirty days of receipt of Harlan's letter, plaintiff wrote to Harrington asking her to reconsider this surprise action. There is documentary verification that Harrington received plaintiff's letter but plaintiff received no response.

## IV. STATEMENT OF THE ISSUES

**The instant matter is confined to plaintiff's request for reinstatement of his right to complete two denial of promotion grievances and mandate that defendants allow him to complete that process. One hearing was in its final stages when he was terminated. The second was scheduled to follow after completion of the first[6] when defendants cancelled both. Both processes were guaranteed by UCB's Staff Personnel Policies, which are the equivalent of statute. (*Ishimatsu v. Regents of University of California* (1968) 266 Cal.App.2d 854, 860-2, 864).**

**<u>Reversing defendants' improper action of depriving plaintiff of his right to complete his denial of promotion grievance processes is the sole remedy sought from this Court. The subject of correcting defendants' improper action in this regard is unrelated to any prior litigation or matters before this Court or any other court.</u>**

---

[6] Although plaintiff had the right to individual grievance processes for the remaining three denials of promotion, he stipulated to defendants' request that the latter grievance process resolve the remaining three denials of promotion. In return defendants allowed plaintiff to choose that process' hearing officer.

In violation of plaintiff's Constitutional Rights per Amendments I and XIV and his rights under the governing rules and regulations of UC and UCB, UCB's Labor Relations Department in cooperation with UCBPD and its chief, Victoria Harrison denied plaintiff his proper due process recourse to grieve denial of his promotion. The evidence will indicate that denial of plaintiff's First Amendment protected speech was a substantial and motivating factor in defendants' actions which also constituted disability discrimination per the ADA and Sections §794(b)(2)(A) of the Federal Rehabilitation Act of 1973.

While defendants themselves repeatedly engaged in ex parte communications with the in process denial of promotion grievance Hearing Officer, and despite the fact that Officer Einheber was representing himself, defendants began to deny Officer Einheber such access after Officer Einheber's termination was reversed. (Prior to reversal of his termination because of his self-representation plaintiff had unopposed direct access to the denial of promotion grievance Hearing Officer, as he had had to the termination Hearing Officer).

## V. ARGUMENT

**In contrast to abundant evidence that UCB Labor Relations Department's prior consistent practice was to notify grievants of new and pending grievance related actions, defendants cancelled the hearings without notice. Had defendants merely notified plaintiff that if no action were taken by a certain date that the hearings would be cancelled, plaintiff would have had the opportunity to remind defendants that he was waiting for Harlan to schedule the hearings as promised by Harrington, or do whatever else he might have been instructed.**

1   It was the defendants who for years forcibly repelled plaintiff's attempts
2   to resolve a process they had pledged to resume and which is guaranteed by
3   their own policies and procedure as well as due process rights.

4      UC's policies and procedures are the equivalent of statute. Under Staff
5   Personnel Policy (SPP) 280 <u>Employee Grievances)</u> 280.1 states: "It is the
6   policy of the University to encourage and facilitate the resolution of employee
7   complaints in a prompt and equitable manner."

## VI. PRAYER

9      Plaintiff prays that the Court will restore his due process and related
10  Constitutional Rights, including those of Amendments I and XIV which were
11  violated by surprise abortion of plaintiff's grievance hearings.  Plaintiff asks
12  the Court to order defendants to complete plaintiff's grievance hearings,
13  which they unnecessarily delayed and then quashed.

14     In the alternative, should the Court decide to hear the matter in detail,
15  plaintiff asks the Court to award any appropriate punitive damages and reimburse
16  plaintiff related costs and expenditures as yet undetermined and as the Court, in its
17  wisdom, deems proper. Additionally, plaintiff requests reimbursement for wages
18  lost were the matter timely/rightfully resolved.   Plaintiff requests that the
19  maximum legal interest be appended these sums, if he prevail.

## DECLARATION

21  I declare under penalty of perjury that the foregoing complaint is true and correct
22  to the best of my knowledge.  Signed this Twenty-Fourth Day of February, 2008 at
23  New York, New York.

Jack Einheber, Plaintiff Pro Se